THE STATE ex rel. EZRA L. VARNEY v. WILLIAM W. WYMAN.

1. REPEAL OF STATUTE—CONSTITUTION—COUNTY OFFICERS.—By the statutes of the territory, provision was made for the election of county treasurers annually, and that they should go into office on the first Monday in January in each year.   By the seventh section of the schedule to the constitution, adopted in 1848, it was provided that "all county, precinct and township officers shall continue to hold their respective offices, unless removed by competent authority, and the legislature shall, in conformity with the provisions of the constitution, provide for the holding of elections to fill such offices respectively," and at the general election in 1848, after the adoption of the constitution, W. was elected county treasurer, and the state legislature afterwards passed an act, which took effect on the first of May following, providing for choosing, at the general election in each year, so many of the officers named in.

The State ex rel. Varney vs. Wyman.

that act as were by law to be elected in each year, among which was mentioned the office of county treasurer; and it was further provided, that county treasurers should hold their offices for two years. Under this act V. was elected county treasurer at the general election in 1849, and qualified; but W. claimed the right to hold the office, under the election of 1848, for the term of two full years. *Held,* 1. That the constitution did not repeal any of the laws of the territory which were not repugnant to it, and the provision in question only modified the term of service of officers in office at the time of its adoption. 2. The provision that county treasurers "shall hold their offices for two years," is applicable only to those elected under the act which went into effect May 1, 1849; and under this act V. was rightfully elected county treasurer for the term of two years. 3. The provision in the constitution modified W.'s term of office only so far as to enable him to hold the office until the legislature made provision for filling it by election, and the act of the state legislature did not apply to or extend his term of office to two years. STOW, C. J., *dissenting.*

(2 *Chand.* 5.)

THIS was an information in the nature of a *quo warranto*, by the relator, *Varney*, to possess himself of the office of treasurer of the county of Dane, together with the books, papers and appendages thereof, as against the respondent, *Wyman*. It appeared that the relator was elected treasurer of the county at the election in the year 1849. It also appeared that the respondent was elected at the general election in 1848 to the same office, and qualified according to law. That the relator, after his election in 1849, took the oath of office, but that the respondent refused to deliver to the relator the books and papers belonging to the office, or to give place to him as treasurer, on the ground that, at the time of the election of the relator, there was no law in force authorizing the election of treasurer.

The opinion of the court clearly exhibits the grounds of the decision.

*Abbott & Cothren*, for relator.
*Collins & Clark*, for respondent.

WHITON, J. The object of this proceeding is to obtain possession of the office of treasurer of Dane county. The

relator claims the office by virtue of an election, and it is admitted that he was duly elected to the office at the general election, held on Tuesday succeeding the first Monday in November, 1849, if, by the laws then in force, a lawful election of county treasurer could take place. It is further admitted that the relator took the proper oath and executed the bond required by law, within the time prescribed by section 138 of chapter 10 of the Revised Statutes, and further, that he demanded possession of the books and papers belonging to the office, before commencing this proceeding.

The claim of the relator is resisted by the respondent, who was elected to the office at the general election in 1848, on the ground that there was no law in force authorizing an election of county treasurers at the time when the relator claims to have been elected.

Various acts of the legislature of the territory and state of Wisconsin, and the constitution of the state, were referred to in the argument, all of which I will notice. The act of the legislature of the territory which took effect in July, 1839 (Stat. Wis. Ter., p. 97), provided for the election of county treasurers annually. The same act prescribed their powers and duties and fixed their compensation. The next act bearing upon the subject was passed by the legislature of the territory, in 1841. This act does not alter the act of 1839, except to provide that the term of service of the county treasurers, when in office, should expire on the first Monday of January then next, and that the term of service of those afterwards to be elected should commence on the first Monday in January in each year. Sess. Laws, 1841, p. 33. The next is an act passed in 1841, in relation to township and county government. This act only applied to those counties which adopted it, and, like the act of 1839, provided for the annual election of county treasurers. Town act, p. 72. The next act bearing upon the subject was passed in 1842. Sess. Laws, 1842, p. 43. This act merely declares the county officers,

The State ex rel. Varney vs. Wyman.

elected at the preceding general election, to be in office from the first Monday in January, 1842, and provides that the tenure of office of those officers, elected or to be elected in pursuance of the provisions of the act in relation to township and county government, should not be affected by it.    These are all the acts of the legislature of the territory, bearing upon the subject, which I have been able to find ; and, taken together, they provide for the election of county treasurers annually, and for their going into office on the first Monday of January in each year.    They prescribe the powers and duties of those officers and fix their compensation.    By virtue of their provisions county treasurers were elected, and held their offices until the constitution of the state was adopted in 1848.

That instrument contains a provision upon the subject of county officers, which, in connection with subsequent acts of the legislature, the respondent contends, renders the election of the relator illegal.    The clause of the constitution referred to, is the seventh section of the schedule, and is as follows :  " All county, precinct and township officers shall continue to hold their respective offices, unless removed by competent authority, until the legislature shall, in conformity with the provisions of this constitution, provide for the holding of elections to fill such offices respectively."    The counsel for the respondent contended, in the argument of the case, that this provision had the effect to repeal the acts of the legislature of the territory, upon the subject of county treasurers, or at least to create a new tenure for the office.    I am clearly of opinion that it cannot have the effect to repeal the acts of the legislature in question.

The state constitution repealed none of the laws of the territory, except such as were repugnant to it, and this clause of the constitution, and the acts of the legislature referred to, may well stand together; the latter modified only so far as the term of service of those who held the offices, at the time when the constitution was adopted, were concerned.    To

admit that the constitution repealed, those acts, would be to hold that, after the adoption of the former, there was no law in existence, which defined the powers with which these officers were clothed, or the duties which they were to discharge, and I cannot think that by any just rule of construction, such an effect can be given to it.    Nor do I think that a new tenure was created for these offices.

The provision in the constitution applies only to those officers who were in office at the time of its adoption, and does not establish any tenure for those who were afterwards elected.    Those then in office were to hold their offices until the legislature made provision for filling them by election; but in no other respect did the constitution interfere with the tenure of these offices, as established by the previous acts of the legislature.    It may well be imagined that the framers of the constitution supposed that when the legislature provided for filling these offices by election, they would also specify the term the incumbents were to serve.    If this had been done, no difficulty would have arisen, but it was omitted.    The provision for filling these offices was made by an act passed at the first session of the legislature after the constitution was adopted ; by virtue of it the respondent was elected; and if· the laws of the territory in relation to the office were not repealed, nor the tenure of the office changed by the constitution, except so far as those persons were concerned who filled the offices when the constitution went into effect, it follows that he was elected for the term as fixed by the laws of the territory which we have seen was one year only.

There remains but one other subject of inquiry, and that is, whether any law was in existence at the time the relator claims to have been elected by which his election was authorized.    There can be no doubt on the subject.    The legislature passed an act which went into effect on the first day of May, 1849, which provides that there shall be chosen at the general election in each year, so many of the officers named

in the act " as are by law to be elected in such year," and which names county treasurers among the number. Rev. Stat. ch. 6, § 3.

Now, if the respondent was elected for one year, the election of his successor was proper and necessary at the general election in 1849. It can make no difference that the legislature passed an act which took effect on the first day of May, 1849, providing that county treasurers shall hold their offices for two years, as this provision was .clearly intended to apply only to those elected after the law went into effect. Nor can section 85, of chapter 6, of the Revised Statutes, which was referred to ·in the argument for the respondent, at all affect the question. That provides for the election of all county officers whose election is not otherwise specially provided for at the general election in 1850, and at the general election in every second year afterwards. Now, if the view I have taken of the subject is correct, the election of county treasurers was provided for at the general election in 1849, by section 3, of chapter 6, of the Revised Statutes, which went into effect on the first day of May, 1849, and as the legislature have provided by an act, which also went into effect on the first day of May, 1848, that county treasurers shall hold their offices for two years, it follows that no election of county treasurers can take place until the year 1851, except for the purpose of filling vacancies. It necessarily follows, from the view I have taken of the subject, that the relator was rightfully elected, for the term fixed by law, at the time of his election, which is two years.

STOW, C. J., *dissenting*. It is always with timidity and regret that I dissent from the opinion of the majority of this court, and it is particularly embarrassing to do so alone. But as I have not been able to come to the same conclusion at which my brethren have arrived, and as the principle involved in this case is one of great public importance, though the

particular question is not likely to arise again, I think it my duty to put my dissent, and the reasons of it, in a few words, on record ; premising that this is one of those cases where a little common sense, and a little political knowledge, are worth a deal of legal learning.

I agree with my brethren that the law of 1841, if not repealed, authorized the election of the relator ; I agree that that law was continued in force by the second section of the constitutional schedule. I go even farther ; I hold it would have remained in force, until repealed, had there been no constitutional provision on the subject ; for I do not assent, at all, to the new nullifying doctrine, that the ordinary municipal laws of a country are abolished by a mere change of government—even revolution, or conquest, works no such sweeping destruction. And I admit, that the act of 1841 was not, *in terms*, repealed at the time of the last general election. But with all this, I cannot recognize the relator's right to the office he seeks.

The act of 1841, I am inclined to think, was repealed, in effect, by that of 1848, providing for the election of county officers, but whether it was, or not, I have no doubt that it was so repealed, and intended to be repealed, by the provisions of the Revised Statutes.

Among the canons for construing statutes, this one has always been admitted : That you are to look into the reason, the occasion, and the intention of the law. The rule is an old one—certainly as old as Plowden (*Zouch v. Stowell*), and probably as old as Deuteronomy. And this rule is particularly to be observed in reference to general public laws which regard the policy of the state; and do not involve any particular private right. Governed by this rule, I cannot but consider the territorial act of 1841 as repealed by the Revised Statutes. We know—it is known to all, and acknowledged by all—that the legislature intended to separate the election of county from that of state officers; that, while both were

to be elected at general annual elections, they should severally be elected in different and alternate years. A most commendable purpose, and one which was demanded alike by public policy and political morality. Our people had seen and felt here, and in the older states whence they had emigrated, the mischiefs and vice of mixing up their local affairs with general politics, and they wished, as far as practicable, to correct the evil. The legislature, a more correct exponent in this case than usual of the popular will, intended to do, and I believe did, what it thought would be most effectual for this purpose, by providing (§ 85, R. S. 76), that "all county officers authorized by law to be elected in any county now organized in this state, shall, *unless otherwise specially provided*, be chosen at the general election in the year 1850, and at the general election in every second year thereafter"—being different years from that provided by the constitution for the election of the state officers.

It is contended, however, and such seems to be the opinion of the court, that the election of county treasurers was specially provided for by the act of 1841; and which act, it is acknowledged, had not been, in terms, repealed last fall. But with what propriety can it be said that this old territorial law made *special* provision for the election of the county treasurers of the state? Can this be the sense in which the legislature used the word "special?" If so, I know of hardly anything in our statutes which is not special—there is nothing general. But look again at the purpose of the legislature. It was to separate county interests, or, if you please, county politics, from state politics, and it would be strange indeed, if the legislature had left that county office, which should be, of all others, except that of a judge, the farthest removed from party politics, to be trafficked for and gambled for at a·state election. The supposition assumes that the legislature must have been unaccountably heedless, disgracefully stupid, or willfully dishonest, neither of which am I willing, for a moment,

to admit. I have no doubt, as the constitution had made the state officers elective the odd years, that the legislature intended that the treasurers, in common with other county officers, should be elected the even ones; and I have as little doubt that it made the necessary provision for that purpose by the 85th section, page 76, of the Revised Statutes. Yet I can readily understand how legal refinement and research may well enough lead to a different conclusion.

I fully concur with my brethren, that the county treasurers, legally elected, whether the last fall or the next, hold their offices for two years.

